**UNITED STATES of America, Appellee,**

v.

**Robert ABRAMS, also known as Reuben Abrams, also known as John Fallon, also known as David Jacobs, Defendant–Appellant.**

No. 962, Docket 97–1315.

United States Court of Appeals, Second Circuit.

Argued Feb. 12, 1998.

Decided Feb. 23, 1998.

**705**

David L. Lewis, New York City, for Defendant–Appellant.

Lewis J. Liman, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty. for Southern District of New York, George Canellos, Ira M. Feinberg, Asst. U.S. Attys., New York City, on brief), for Appellee.

Before: VAN GRAAFEILAND, JACOBS, and LAY,* Circuit Judges.

PER CURIAM:

Robert Abrams appeals from a judgment entered following a jury trial in the United States District Court for the Southern District of New York (Sprizzo, J.), convicting him of three counts of subscribing to false personal tax returns in violation of 26 U.S.C. § 7206(1). On the first day of the eight-week trial, one juror sent a note asking the court to instruct the jurors not to discuss the case until they were instructed to begin deliberations. The court gave the instruction. On

* Honorable Donald P. Lay, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

appeal, defendant claims that the district court abused its discretion in failing to investigate the circumstances and substance of any premature jury discussions.

We are satisfied that the district court did not abuse its discretion and that in any event, there is no appreciable likelihood that the defendant suffered any prejudice from the court's resolution of the incident. Accordingly, we affirm.

## BACKGROUND

Robert Abrams was indicted on thirteen counts of violating the Internal Revenue Code. On September 3, 1996, the district court impaneled the jury and gave several preliminary instructions. Judge Sprizzo told the jurors to avoid press accounts of the case, but did not deliver his usual instruction that the jurors should avoid discussing the case among themselves until they were sent to deliberate. None of the parties noticed this accidental omission. The jury was then dismissed for the day and directed to return on the morning of September 5, 1996.

That morning, the court gave some additional preliminary instructions regarding what is (and is not) evidence; the parties gave their opening statements; Internal Revenue Service ("IRS") Revenue Agent Patrick Campbell mounted the witness stand and testified generally about the methods used by the IRS for determining an individual's tax liability; and the trial adjourned for lunch.

When court reconvened after lunch, the clerk handed the judge a note from one of the jurors:

Your Honor:

Since there are several jury members that are new to the judicial system, please remind them about discussion prior to going to deliberation.

   Juror

The following exchange between the court and defense counsel William Aronwald ensued:

Mr. Aronwald: Judge, the only thing is that it appears from the note that the jury may have begun discussing the case even though they haven't been instructed yet. I wonder if the Court would be willing to have the juror who wrote the note just come in to the robing room, perhaps with counsel, and find out what prompted the juror to write this note.

The Court: I think that would be the most improvident thing to do.

Mr. Aronwald: Whatever your Honor would suggest. I am not sure whether there have been any discussions.

The Court: That would be unduly intrusive upon the jury's process, so to speak. For me to go in the jury room and say, "What have you people been talking about?" is really intrusive.

Mr. Aronwald: Just the one juror who wrote the note.

The Court: It is the same problem. I normally would give them an instruction as part of my opening remarks that they not discuss the case during the trial, which is all I intend to do.

Mr. Aronwald: Perhaps we can do this. In response to the note, your Honor can give that instruction, and then, with the Court's permission, perhaps I can just think a little bit more about it so we don't have to take up any more time today. If on Monday I have a specific application, I will make it then.

The Court: The jury may be of the mind to think they can discuss this case during the trial. I thought I told them they can't.

Mr. Aronwald: I think you did. I think you told them that when you excused them Tuesday night. I think you said they are not permitted to discuss the case.

The Court: I meant discuss it with outsiders. Normally, I tell the jury, as part of my general instructions, that they are not to discuss it even among themselves. There is nothing improper in the jury's discussing the case among themselves before they reach deliberations. There is nothing ipso facto wrong with it. It is just not a good idea, and I tell the jury not to do it. But I don't know that any other judges tell the jury not to do it. You just happen to have a very smart juror who maybe has served on other juries before and has heard that instruction from other judges and thinks I should give it here. That is about as far as I am going to go. I don't know that there is anything wrong with the jury's discussing the case.

I think at the moment what I am inclined to do is to give them my standard instruction, remind them that when I said don't discuss the case with anybody, I meant don't discuss it even among themselves. I give a fairly elaborate charge on that.

You have your exception. I think doing anything more would be overly intrusive into the jury process.

The judge then brought the jurors back to the courtroom and told them that he had mistakenly neglected to instruct them not to discuss the case among themselves until deliberations begin, explained that this practice was preferred because the government presented its case first, and directed them not to discuss the case until they have heard all of the evidence. He concluded: "So if any juror has been [discussing the case] or is thinking it is all right to [discuss the case], I want to be sure that you understand that it is not appropriate for you to do that."

After the ensuing eight-week trial, Abrams was convicted on three counts of subscribing to false personal tax returns in violation of 26 U.S.C. § 7206(1). The jury could not reach a unanimous decision on the remaining counts and as to those counts the court declared a mistrial. Abrams was sentenced to 78 months of imprisonment and fined $125,000, and is currently serving his sentence.

## DISCUSSION

### I

In a footnote, the government raises and lays to rest a threshold matter of juris-

diction. Abrams has been sentenced on the three counts of conviction; but the court declared a mistrial on the other ten counts, which remain outstanding. The government has represented to the district court that it does not intend to retry those counts if the conviction on the three counts is affirmed; and any retrial has been deferred until this appeal is resolved. The question is whether we have jurisdiction over an appeal from the judgment when other counts of the indictment (as to which the district court declared a mistrial) are unresolved and await retrial.

Our jurisdiction extends to appeals from "all final decisions of the district courts." 28 U.S.C. § 1291 (1994). The Supreme Court has instructed that "the judgment is final for the purposes of appeal when it terminates the litigation between the parties on the merits and leaves nothing to be done but to enforce by execution what has been determined" and that "[f]inal judgment in a criminal case means sentence." *Berman v. United States*, 302 U.S. 211, 212–13, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937) (citations and internal quotation marks omitted). Further, 18 U.S.C. § 3582(b) provides that, notwithstanding several grounds on which a sentence might be modified, "a judgment of conviction that includes ... a sentence [of imprisonment] constitutes a final judgment for all other purposes." 18 U.S.C. § 3582(b) (1994); *see United States v. Auman*, 8 F.3d 1268, 1271 (8th Cir.1993) (noting that § 3582(b) "defines 'final judgment' ").

Without discussing jurisdiction, we have from time to time decided an appeal from a conviction and sentence on less than all counts of an indictment when other counts tried in the same trial remained unresolved after a mistrial. *See United States v. Kaufman*, 311 F.2d 695, 697–99 (2d Cir.1963); *see also United States v. Sehnal*, 930 F.2d 1420, 1424 (9th Cir.1991). This approach is faithful to the articulation by Congress and the Supreme Court as to the nature of a final judgment in criminal proceedings. *See* 18 U.S.C. § 3582(b); *Berman*, 302 U.S. at 212–13, 58 S.Ct. at 166; *see also United States v. Helmsley*, 864 F.2d 266, 268 (2d Cir.1988) ("In a criminal case ... an appeal usually may be taken only after sentence has been

imposed because that is the final judgment in such a case."). Although the litigation as framed in the indictment may not yet have run its course, the counts of conviction have been resolved and the sentence is ready for execution. The unresolved counts have in effect been severed, and will be resolved another time in a separate judgment. *Cf. United States v. Powell*, 24 F.3d 28, 30 (9th Cir.1994) ("Rule 14 contemplates the need for two separate trials when severance occurs. Accordingly, each conviction on severed counts should be separately appealable upon the imposition of sentence.").

As the government concedes, the Seventh Circuit has held that a defendant cannot appeal a count on which he has been convicted and sentenced when other counts as to which the district court had declared a mistrial remain unresolved. *United States v. Kaufmann*, 951 F.2d 793, 795 (7th Cir.1992). As a later Seventh Circuit decision recognizes, that case represents the minority approach. *See United States v. Kaufmann*, 985 F.2d 884, 891 (7th Cir.1993). If we were to adopt the view of the Seventh Circuit, Abrams would be serving his sentence without acquiring the right to appeal it. The Seventh Circuit in *Kaufmann* undertook to mitigate that unacceptable ramification of its analysis by approving the district court's stay of the execution of the defendant's sentence pending the appeal. *See Kaufmann*, 951 F.2d at 795. But we think that the Seventh Circuit's approach would substantially delay the execution of a valid conviction and sentence, force trials that may never be needed, and impose expense and burden on the prosecution and the defense—undesirable results that are not mandated by the jurisdictional statute.

Accordingly, we hold that we have jurisdiction to consider this appeal.

**II**

Abrams argues that the district court abused its discretion by failing to investigate the nature of any premature discussions of the case among the jurors. We disagree.

## A

The government argues that Abrams failed to request formally that the district court question the juror who submitted the note, that Abrams thereby failed to preserve his objection to the district court's handling of the situation, and that we should review the district court's actions for plain error.

This is a close question. Defense counsel did seem to acquiesce in the district court's suggested approach, and indicated that he may propose further measures at a later time (which he never did); at the same time, counsel initially asked that the juror be questioned, and the district court noted that defense counsel had reserved his exception. Because we conclude, under the ordinary standard of appellate review, that the district court did not abuse its discretion, we need not consider whether the objection was properly preserved or waived.

## B

Abrams does not argue that the district court committed reversible error in omitting to give an instruction on premature jury discussions at the start of the trial. We have previously stated that "[i]t has never been the law of this circuit that the trial judge must admonish the jurors not to discuss the case among themselves, although it has been the practice of most of the judges to suggest that it is advisable to refrain from such discussion until the case is concluded." *United States v. Viale,* 312 F.2d 595, 602 (2d Cir. 1963). Abrams' argument is addressed to the district court's handling of the juror note situation.

■ We review a trial judge's handling of juror misconduct for abuse of discretion. *See United States v. Panebianco,* 543 F.2d 447, 457 (2d Cir.1976). Although the events at issue here do not entail juror misconduct—no initial warning having been given—the district court's latitude is no narrower. In conducting our review, we keep in mind that "[c]ourts face a delicate and complex task whenever they undertake to investigate reports of juror misconduct or bias during the course of a trial." *United States v. Thomas,* 116 F.3d 606, 618 (2d Cir.1997).

Although such investigation raises fewer concerns when conducted prior to the start of jury deliberations, any such investigation is intrusive and may create prejudice by exaggerating the importance and impact of what may have been an insignificant incident. *See, e.g., United States v. Thornton,* 1 F.3d 149, 156 (3d Cir.1993). The district court, which "observ[es] the jury on a day to day basis ... is in the best position to sense the atmosphere of the courtroom as no appellate court can on a printed record." *United States v. Barnes,* 604 F.2d 121, 144 (2d Cir. 1979). "In many instances, the court's reiteration of its cautionary instructions to the jury is all that is necessary." *United States v. Thai,* 29 F.3d 785, 803 (2d Cir.1994).

■ Here, we are convinced that the district court did not abuse its discretion in deciding to deal with the juror's note solely by giving a curative instruction. The circumstances surrounding the note suggest that if any discussions had taken place, they were insignificant. The court received the note after the lunch break on the first day of the trial. Jurors had only heard opening statements, and part of the testimony of a single government witness who had reviewed generally the IRS's methods in determining an individual's tax bill. The jury had been instructed that opening statements are not evidence. Therefore, no actual evidence relating to the defendant's guilt had been presented. In addition, the note did not explain the nature of any discussions or even indicate whether such discussions had taken place. Thus, the possibility of any far-reaching conversation regarding views on the case was minimal and any possible prejudice unlikely. Moreover, because the district court did not initially give an instruction on intra-juror discussions, any such discussions among the jurors did not constitute juror misconduct.

Under the circumstances, the district court's decision to give a curative instruction without making further inquiry was a reasonable solution: any impact on the defendant's right to a fair trial from premature discussion among jurors on the first day of trial was minimal, and any questioning of jurors was likely to be intrusive and to magnify the

episode. The instruction effectively communicated that any opinions that had been formed based upon such conversations should be disregarded, thereby dispelling any possible damage.

■ Finally, even if there were an abuse of discretion, Abrams could not possibly demonstrate actual prejudice. "[P]rejudice is generally the touchstone of entitlement to a new trial when improper intra-jury influences are at issue." *United States v. Resko,* 3 F.3d 684, 694 (3d Cir.1993). We appreciate that (as Abrams contends) the reason he cannot show prejudice is that the district court refused to create a record by questioning the jurors about their conversations. But we think that this case is distinguishable from *Resko,* where the court found that the prejudice inquiry was made impossible by the district court's failure to question the jurors on the substance of any premature discussions, and therefore assumed prejudice. *Id.* The discussions in *Resko* occurred on the seventh day of a nine-day trial; the jurors indicated in a questionnaire that they had all discussed the case; and the discussions violated a directive of the court. *Id.* at 688. In Abrams' case, there is no indication of juror misconduct; the jurors were given a curative instruction that we have no reason to think would have been disregarded; and any exchanges among the jurors took place on the first day of an eight-week trial, before any appreciable evidentiary presentation by the government.

### CONCLUSION

The judgment of the district court is affirmed.