Patricia LUCA, Plaintiff–Appellee,

v.

COUNTY OF NASSAU, Nassau County Police Department, Nassau County Civil Service Commission, Karl Kampe in his individual and official capacity, Police Officer Creswell in her individual and official capacity, and Captain McGovern in his individual and official capacity, Defendants–Appellants.

No. 08–3384–cv.

United States Court of Appeals, Second Circuit.

Aug. 19, 2009.

Scott A. Korenbaum (Frederick K. Brewington & Jill R. Shellow, on the brief), Hempstead, NY, for Appellee.

Dennis Saffran (Lorna B. Goodman, County Attorney of Nassau County, Gerald R. Podlesak & Ralph J. Reissman, Deputy County Attorneys, on the brief), Mineola, NY, for Appellant.

PRESENT: JOSEPH M. McLAUGHLIN, GUIDO CALABRESI and REENA RAGGI, Circuit Judges.

## SUMMARY ORDER

Defendants appeal a money judgment entered after a jury trial in favor of plaintiff Patricia Luca on her Title VII claim, *see* 42 U.S.C. § 2000e *et seq.*, that defendants denied her employment as a police officer in retaliation for a lawsuit she filed charging her employer, the Nassau County Sheriff's Department, with sexual harassment. Defendants assert that the trial court (1) made comments that deprived them of a fair trial, (2) failed adequately to inquire about witness-juror contact, (3) improperly calculated front pay, and (4) improperly calculated attorneys' fees. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision.

1. *Fair Trial Claim*

a. *The Comment to Eileen Creswell*

The crux of defendants' fair trial claim concerns a colloquy between the district judge and defendant Eileen Creswell. In explaining at trial why defendants did not hire Luca as a police officer, Creswell testified that "criminal activity . . . was swirling around [Luca]." Trial Tr. at 855. When Creswell attributed this information to a confidential source that she declined to name, the trial judge struck the testimony and admonished Creswell. *Id.* at 856. Soon thereafter, when Creswell testified that Luca's car had been "used for an

insurance scam," the district court made the comment here at issue: "What insurance scam? I didn't hear about insurance scam here. You sure you're not making this all up? Next question." *Id.* at 857.

The comment prompted defendants to move for a mistrial, which the district court denied. Nevertheless, the judge charged the jury that at no time had he "expressed nor attempted to intimate an opinion about how [the jury] should decide" the case. *Id.* at 1055. The judge elaborated: "It could be that based upon who the witness was and the questions that I was asking the temptation might be great for you to think that the Judge was signaling something to you, that I believed the person or I didn't believe the person, but I want you to resist that temptation." *Id.* at 1056.

The law governing defendants' fair trial claim is well established: A district court "may actively participate [in a trial] and give its own impressions of the evidence or question witnesses, as an aid to the jury, so long as it does not step across the line and become an advocate for one side." *United States v. Filani,* 74 F.3d 378, 385 (2d Cir.1996). While a judge should strive to create an "atmosphere of perfect impartiality," *Shah v. Pan Am. World Servs., Inc.,* 148 F.3d 84, 98 (2d Cir.1998) (internal quotation marks omitted), the law assures litigants a fair trial, not a perfect one, *Zinman v. Black & Decker (U.S.), Inc.,* 983 F.2d 431, 436 (2d Cir.1993). Thus "[i]n reviewing a challenge to a trial judge's conduct, we determine not whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid[, but] ... whether the judge's behavior was so prejudicial that it denied [a party] a fair, as opposed to a perfect, trial." *Shah v. Pan Am. World Servs., Inc.,* 148 F.3d at 98 (internal quotation marks omitted, second and third alterations in original).

■ In this case, we conclude that the "making this up" comment crossed the line of impartiality and would have been better left unsaid. Nevertheless, when viewed in the context of a six-day trial generating a transcript of over 1000 pages, we are not persuaded that the error was so prejudicial as to deny defendants a fair trial. *Cf. Santa Maria v. Metro–North Commuter R.R.,* 81 F.3d 265, 273–75 (2d Cir.1996) (vacating judgment where district court displayed "antipathy" to plaintiff's claim "[t]hroughout the trial," held plaintiff's attorney in contempt, and ordered local counsel to substitute for plaintiff's attorney without permitting adequate time for preparation); *United States v. Filani,* 74 F.3d at 386 (vacating judgment where, *inter alia,* "of the roughly 60 pages of the trial transcript covering appellant's testimony, the trial judge substantively challenged the defendant on 16, or over 25 percent, of them"). The trial judge was careful to give a remedial instruction to cure any prejudice from its comment, and we have no reason to think that the jury could not follow this instruction. *See United States v. White,* 552 F.3d 240, 250 (2d Cir.2009) (holding, where defendant claimed supplemental jury charge expressed court's negative assessment of his credibility, but court provided curative instruction, that "[w]e ordinarily presume that the jury adheres to curative instructions and see no reason to depart from that general rule here"); *United States v. Cox,* 324 F.3d 77, 87 (2d Cir.2003) ("[A]bsent evidence to the contrary, we presume that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court." (internal quotation marks omitted, alteration in original)).

#### b. *Other Conduct*

■ To the extent defendants complain about other conduct by the trial judge, because no objection was raised in the district court, our review is limited to fundamental error, and we identify none in this case. *See Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 795 (2d Cir.2002) ("In the civil context . . . we reverse only if there has been fundamental error. Fundamental error is more egregious than the 'plain' error that can excuse a procedural default in a criminal trial, and is so serious and flagrant that it goes to the very integrity of the [proceeding]." (internal quotation marks omitted, alteration in original)). The limitations placed by the trial judge on defendants' presentation of evidence fell well within his discretion in managing the examination of witnesses. *See United States v. Local 1804–1, Int'l Longshoremen's Ass'n, AFL–CIO*, 44 F.3d 1091, 1095 (2d Cir.1995). Nor are we persuaded that the trial judge erred by "generally injecting [himself] into trial." Appellant Br. at 27. A trial judge must "set the tone of the proceedings and exercise sufficient control to insure that the trial will be an orderly one in which the jury will have the evidence clearly presented." *Anderson v. Great Lakes Dredge & Dock Co.*, 509 F.2d 1119, 1131 (2d Cir.1974). The record in this case demonstrates that the trial judge's interventions, with the exception of the single comment discussed in the preceding section, served to clarify facts for the jury and to move the proceedings forward.

Accordingly, we reject defendants' misconduct claim as without merit.

#### 2. *Juror–Witness Contact*

Defendants complain that the district court mishandled an incident of juror-witness contact by failing to interview the juror involved. To secure reversal on this ground, defendants must demonstrate both juror misconduct and ensuing prejudice. *United States v. Cox*, 324 F.3d at 86; *see also Manley v. AmBase Corp.*, 337 F.3d 237, 251 (2d Cir.2003) ("The issue . . . is not the mere fact of [jury] infiltration . . . but the nature of what has been infiltrated and the probability of prejudice." (internal quotation marks omitted, alteration in original)). We generally review a trial court's handling of alleged juror misconduct for abuse of discretion. *United States v. Abrams*, 137 F.3d 704, 708 (2d Cir.1998). Where, as here, no objection was raised at trial, we review only for fundamental error. *Taylor v. Vt. Dep't of Educ.*, 313 F.3d at 795. This case satisfies neither standard.

■ After a juror and witness were observed in conversation during the lunch recess, the district court questioned the witness, who explained that he had not realized he was speaking with a juror and that their conversation had been limited to the previous night's Yankees game. The court accepted this account and did not question the juror; nor was it asked to do so by any party. The court did, however, repeat to the entire jury its earlier admonition not to converse with anyone associated with the case. No objection was raised to this procedure.

Because we recognize that in handling incidents of possible juror misconduct, a trial court confronts a "delicate and complex task," we accord it "broad flexibility." *United States v. Cox*, 324 F.3d at 86 (internal quotation marks omitted). The court must be sure that any investigation it conducts does not "create prejudice by exaggerating the importance and impact of what may have been an insignificant incident." *United States v. Abrams*, 137 F.3d at 708. Moreover, "[i]n many instances, the court's reiteration of its cautionary instructions to the jury is all that is neces-

sary." *Id.* (internal quotation marks omitted). Applying these principles to this case, we are satisfied that the district judge was well positioned to assess the credibility of the witness's explanation as to the circumstances and content of the conversation at issue and to determine without further inquiry of the juror that the fairness of the trial had not been compromised.

Accordingly, we identify no error, let alone fundamental error.

### 3. *The Award of Front Pay*

On this appeal, defendants do not challenge the district court's decision to award front pay, but only the amount of its award: $604,589, which represents the difference between what Luca would have earned as a probation officer and what she will earn as a corrections officer if she works until age sixty-two, reduced to present value. Defendants acknowledge that Luca testified that she intended to work until age sixty-two, but note that during her testimony, she remarked that she intended to work for twenty-five years, or until age fifty-one, after which, in a colloquy with the court, she corrected herself. Defendants submit that on this record, any award of front-pay beyond three years was unduly speculative.

■ We agree with Luca that defendants' argument is essentially a challenge to the district court's assessment of her credibility. In the absence of clear error, we defer to a district court's credibility determinations, including its resolution of testimonial inconsistencies. *See Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.,* 422 F.3d 72, 76 (2d Cir.2005) ("[C]lear error review mandates that we defer to the district court's factual findings, particularly those involving credibility determinations."); *Mathie v. Fries,* 121 F.3d 808, 811–12 (2d Cir.1997) (upholding decision of judge at bench trial to credit partially inconsistent testimony of plaintiff). Ordinarily, we will not disturb a trial court's decision to credit live testimony unless the testimony is incoherent, facially implausible, or contradicted by extrinsic evidence. *Anderson v. City of Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). That is not this case. The trial judge was in the best position to determine whether Luca's correction was bona fide, and we have no reason to disturb his assessment. *See id.* (observing that judge was in best position to observe "variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said").

■ In their reply brief and at argument, defendants urged that an award of this length was, as a matter of law, overly speculative and thus beyond the trial judge's discretion. Leaving aside the question of whether this argument was adequately presented in defendants' main brief, we find it meritless. We have repeatedly upheld awards of front pay through retirement where the record contained evidence sufficient to find that a plaintiff had "no reasonable prospect of obtaining comparable alternative employment" and to calculate the resulting salary disparity. *Padilla v. Metro–North Commuter R.R.,* 92 F.3d 117, 126 (2d Cir.1996); *see also, e.g., Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176 (2d Cir.1992). Accordingly, we identify no error in the front-pay award.

### 4. *Attorneys' Fees*

■ In calculating the award of attorneys' fees, the district court looked to the prevailing hourly rates in both the Eastern and Southern Districts of New York. As we recently explained in *Simmons v. New York City Transit Authority,* 575 F.3d 170 (2d Cir.2009), however, an examination of

out-of-district rates is proper only in a narrow set of circumstances. Because the fees in this case were awarded prior to *Simmons,* the record is insufficient to determine whether those circumstances obtain here. Accordingly, the district court's award of attorneys' fees is vacated and remanded for further analysis in light of our decision in *Simmons.*

We have reviewed defendants' remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is VACATED and REMANDED for a new calculation of attorneys' fees, and AFFIRMED in all other respects.