14-3924-cr (L); 14-4339-cr (Con); 14-4581-cr (Con); 15-199-cr (Con)
United States v. Miao et al.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12ᵗʰ day of November, two thousand fifteen.

PRESENT:
> PETER W. HALL,
> GERARD E. LYNCH,
> *Circuit Judges,*
> JED S. RAKOFF,*
> *District Judge.*

---

UNITED STATES OF AMERICA,

*Appellee,*

v.

FENG LI, AKA SEALED DEFENDANT 3,
FENG LING LIU, SHURAN LIU, AKA
SEALED DEFENDANT 4, AKA HARRY, WEN
TING ZHENG, AKA SEALED DEFENDANT 7,
SHU FENG XIA,

*Defendants,*

GUO QIN MIAO, AKA SEALED DEFENDANT
8, AKA LILLIAN, VANESSA BANDRICH,

Nos.  14-3924-cr (L)
      14-4339-cr (Con)
      14-4581-cr (Con)
      15-199-cr (Con)

---

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

AKA Sealed Defendant 2, Yuchang
Miao, AKA Sealed Defendant 5, Rui
Yang, AKA Sealed Defendant 6,
AKA Sunny Yang, AKA Yang, Ms.,

                *Defendants-Appellants*.

_____

| | |
|---|---|
| For Appellee United States: | REBECCA MERMELSTEIN (Patrick Egan and Karl Metzner, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, N.Y. |
| For Defendant-Appellant Guo Qin Miao: | Nicholas J. Pinto, New York, N.Y. |
| For Defendant-Appellant Vanessa Bandrich: | SEAN M. MAHER, New York, N.Y. |
| For Defendant-Appellant Yuchang Miao: | Yuchang Miao, *pro se*, New York, N.Y. |
| For Defendant-Appellant Rui Yang: | STANISLAO A. GERMAN, New York, N.Y. |

Appeals from judgments of the United States District Court for the Southern District of New York (Abrams, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Defendants-Appellants Guo Qin Miao, Vanessa Bandrich, Yuchang Miao, and Rui Yang appeal from final judgments entered by the United States District Court for the Southern District of New York. Each Defendant-Appellant stands convicted of conspiracy to commit immigration fraud in violation of 18 U.S.C. § 371. Bandrich and Yang appeal their judgments of conviction entered following a jury trial; Guo Qin Miao and Yuchang Miao appeal their sentences imposed after guilty pleas. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

I.       Sufficiency of the Evidence Supporting Bandrich's Conviction

Bandrich challenges the sufficiency of the evidence supporting her conviction for conspiracy to commit immigration fraud. She contends that the evidence failed to prove her knowing participation in the conspiracy.

"A defendant challenging the sufficiency of the evidence bears a heavy burden," *United States* v. *Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011); a jury verdict must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011) (internal quotation marks omitted). In considering the sufficiency of the evidence supporting a guilty verdict, the evidence must be viewed in the light most favorable to the government, *see United States v. Temple*, 447 F.3d 130, 136-37 (2d Cir. 2006), and sufficiency must be assessed with respect "to the totality of the government's case and not to each element, as each fact may gain color from others," *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999).

Bandrich has failed to meet her "heavy burden" of demonstrating insufficiency of evidence supporting her conviction. *See Kozeny*, 667 F.3d at 139. It is undisputed that Bandrich was the named partner and sole attorney at Bandrich & Associates—one of the two Chinatown law firms through which the conspiracy operated. The government presented evidence at trial that the fraudulent nature of the firms' asylum applications was discussed openly by employees of both firms. The government also presented evidence that Bandrich personally reviewed her clients' false statements and made material alterations to them without ever consulting with the clients. There was also evidence that handwritten attestation letters were recovered from Bandrich's firm, which had blanks where names could be inserted once applicants had located individuals willing to

3

serve as the letters' authors. Moreover, the government offered a recording of a conversation between Bandrich and a cooperating witness. While some of Bandrich's responses could be construed as not evincing knowledge of fraudulent activities at the law firm, others could be construed as indicating knowledge. It was for the jury to decide how to interpret the tape in conjunction with the other evidence. The evidence, when viewed in the light most favorable to the government, *see Persico*, 645 F.3d at 104, is more than sufficient to support Bandrich's conviction for conspiracy to commit immigration fraud.

II.      Juror Misconduct

Bandrich and Yang challenge the district court's treatment of alleged misconduct by two jurors—Juror 6 and Juror 2. They argue that the district court abused its discretion by failing to dismiss Juror 6 prior to deliberations based on inappropriate conversations she had with another juror and by denying their Federal Rule of Criminal Procedure 33 motion for a new trial based on Juror 2's use of social media during trial.

We review a trial judge's handling of potential juror misconduct for abuse of discretion. *United States* v. *Abrams*, 137 F.3d 704, 708 (2d Cir. 1998). "[W]hen the alleged prejudice results from statements made by the jurors themselves, and not from media publicity or other outside influences," the trial court has especially broad flexibility in handling the matter. *United States* v. *Thai*, 29 F.3d 785, 803 (2d Cir. 1994) (quoting *Grooms v. Wainwright*, 610 F.2d 344, 347 (5th Cir.)), *cert. denied*, 445 U.S. 953 (1980). A mistrial or other remedial measure is only required if both juror misconduct and actual prejudice are found. *United States v. Cox*, 324 F.3d 77, 86 (2d Cir. 2003).

4

Bandrich and Yang's assertion that the district court erred in failing to remove Juror 6, based on allegedly improper conversations she had with Juror 10 during their evening commutes, is not persuasive. Although juror discussions of a case prior to the close of trial "may constitute juror misconduct," when, as here, "the district court instructs a jury to refrain from premature deliberation," *id.*, the district court did not abuse its discretion by accepting Juror 6's account of her conversations with Juror 10. The district court examined Juror 6 *in camera* and reasonably credited her responses that Juror 10 may have made occasional comments or questions about the case but nothing inappropriate was said. *See id.* at 87 ("[A]bsent evidence to the contrary, we presume that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court.") (internal quotation marks omitted).

We further see no abuse of discretion in the district court's denial of Bandrich and Yang's Rule 33 motion based on Juror 2's use of social media during trial. Juror 2's social media postings pertained to the duration of the trial, courtroom temperature, future creative writing projects, and whether it would be appropriate to speak to certain trial participants about her career as a crime fiction writer when the trial concluded. We agree with the district court that Juror 2's responses to questioning did not evince dishonesty and that her social media postings did not violate the spirit of the court's social media instruction, which "was concerned with comments concerning '*the facts or circumstances of the case*.'" J.A. at 2952; *see McDonough Power Equip. Inc. v. Greenwood*, 464 U.S. 548, 556 (1984) ("[T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause."). We also agree with the district court that Juror 2's stated desire to meet with certain trial

5

participants does not, given her career as a crime fiction writer, evince bias against the Defendants or require a post-trial hearing. *See United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989) ("[A] a post-trial jury hearing must be held when a party comes forward with clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred." (internal quotation marks omitted)).

III.      Guo Qin Miao and Yuchang Miao's Sentences

Guo Qin Miao and Yuchang Miao challenge various aspects of their sentences. We review a district court's sentence for reasonableness under a "deferential abuse-of-discretion standard." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted). "This form of appellate scrutiny encompasses two components: procedural review and substantive review." *Id.* "A district court commits procedural error where it fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Robinson*, 702 F.3d 22, 38 (2d Cir. 2012). We will "set aside a district court's substantive determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. Lifshitz*, 714 F.3d 146, 149 (2d Cir. 2013) (internal quotation marks omitted).

Yuchang Miao contends that the district court committed procedural error by applying a four-level enhancement, under U.S. Sentencing Guidelines Manual (U.S.S.G.) § 3B1.1(a), for being "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." *Id.* Yuchang Miao asserts that his participation was limited to assigning

6

clients fake asylum claims during intake interviews and that his wife, Feng Ling Liu, was the sole leader of the conspiracy.

"Whether we consider [a] defendant a leader depends upon the degree of discretion exercised by him, the nature and degree of his participation in planning or organizing the offense, and the degree of control and authority exercised over the other members of the conspiracy." *United States v. Paccione*, 202 F.3d 622, 624 (2d Cir. 2000) (internal quotation marks omitted). "Before imposing a role adjustment, the sentencing court must make specific findings as to why a particular subsection of [the] § 3B1.1 adjustment applies." *United States v. Skys*, 637 F.3d 146, 156 (2d Cir. 2011) (citation and internal quotation marks omitted) (alteration in original). "We review the district court's conclusion that [a] defendant[] deserved a leadership enhancement under U.S.S.G. § 3B1.1(a) *de novo,* but review the court's findings of fact supporting its conclusion for clear error." *Paccione*, 202 F.3d at 624.

There was clear support in the record for the district court's conclusion that Yuchang Miao was a leader of the immigration fraud conspiracy for purposes of U.S.S.G. § 3B1.1(a). Victor You, an unindicted co-conspirator, testified that Yuchang Miao was responsible for hiring and firing him. Another unindicted co-conspirator, Meng Fei Yu, testified that Yuchang Miao hired her and pushed to continue the conspiracy after his wife wanted to end it for fear of government investigation. Meng Fei Yu further testified that Feng Ling Liu once stated that if the government ever began investigating them, the government would want only Feng Ling Liu and Yuchang Miao. There was also ample evidence in the record that Yuchang Miao benefited handsomely from the conspiracy and was responsible for assigning clients false asylum claims and for instructing paralegals on which false stories to write. The district court did not therefore err in

7

finding that Yuchang Miao was a leader of the conspiracy for purposes of U.S.S.G. § 3B1.1(a). *See Paccione*, 202 F.3d at 624.

Guo Qin Miao and Yuchang Miao each contend that the district court committed procedural error by applying a nine-level enhancement, under U.S.S.G. § 2L2.1(b)(2)(C), for an offense involving 100 or more fraudulent documents. They assert that there was no "specific evidence" linking them to the filing of at least 100 fraudulent documents. "To sustain quantity-based enhancements for relevant conduct, the court must base its findings on 'specific evidence' that the offense involved the requisite quantity of items. . . . This requirement has two parts: (a) there must be evidence regarding the quantity of illicit or fraudulent goods and (b) it has to be specific to the defendant." *United States v. Archer*, 671 F.3d 149, 162 (2d Cir. 2011). Specific evidence may be direct or circumstantial, and the sentencing court may use "statistical extrapolation to arrive at an estimate." *Id.*

A review of the record reveals sufficient evidence to support Guo Qin Miao and Yuchang Miao's enhancements under U.S.S.G. § 2L2.1(b)(2)(C). Audrey Caudill-Mirillo, the Deputy Director of U.S. Citizenship and Immigration Services' New York Asylum Office, testified at trial that approximately 1,800 applications were filed by the two law firms during the relevant time period, and cooperating witnesses Victor You and Ming Fei Yu testified that virtually of these applications were fraudulent. The evidence offered at trial was also sufficiently specific to Guo Qin Miao and Yuchang Miao. There was witness testimony that Guo Qin Miao coached clients on how to discuss their fake persecution stories with immigration officials and that she trained other "coaches" to do the same. There was also testimony that Yuchang Miao most often met with clients at their initial meetings, when the fake persecution stories were assigned. In any

8

event, we agree with the district court that Guo Qin Miao and Yuchang Miao could be held responsible for the fraudulent applications attributable to their co-conspirators, because the scope of the conspiracy was sufficiently broad and the co-conspirators' acts were reasonably foreseeable to them. *See United States v. Getto*, 729 F.3d 221, 234 (2d Cir. 2013).[2]

Yuchang Miao lastly contends that there was insufficient evidence to support the district court's $7,245,000 forfeiture order. The district court arrived at the challenged amount by finding that: (1) the conspiracy resulted in the grant of 1,610 asylum applications between January 1, 2007 and December 31, 2012; (2) discounting the number of granted applications by 10% based on trial testimony that 10% of the firms' applications were authentic; and (3) multiplying the remaining applications by $5,000, which reflected a 50% discount of the $10,000 fee that trial testimony established the firms most often received.

"We review a district court's legal determinations regarding forfeiture *de novo* and its underlying factual findings for clear error." *United States v. George*, 779 F.3d 113, 122 (2d Cir. 2015). "The Federal Rules of Criminal Procedure require that '[i]f the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense.'" *United States v. Capoccia*, 503 F.3d 103, 115 (2d Cir. 2007) (quoting Fed. R. Crim. P. 32.2(b)(1)). "The court may make the determination [as to the requisite nexus between assets and criminal violations] based on evidence

---

[2] Guo Qin Miao and Yuchang Miao's assertions that their sentences are substantively unreasonable because, *inter alia*, they do not reflect the need to avoid unwarranted sentencing disparities, are unavailing. The district court explicitly considered the need to avoid unwarranted sentencing disparities, and Guo Qin Miao and Yuchang Miao have failed to show that their sentences, which were each at the low end of the applicable Guidelines range, "cannot be located within the range of permissible decisions." *Lifshitz*, 714 F.3d at 149; *see United States v. Irving*, 554 F.3d 64, 76 (2d Cir. 2009).

9

in the record, or on *additional* evidence submitted by the defendant or evidence submitted by the government in support of the motion for the entry of a judgment of forfeiture." *Id.* (quoting Fed. R. Crim. P. 32.2 advisory committee's note (alterations in original)). "The calculation of forfeiture amounts is not an exact science. [T]he court need not establish the loss with precision but rather need only make a reasonable estimate of the loss, given the available information. A court is permitted to use general points of reference as a starting point for calculating the losses or gains from fraudulent transactions and may make reasonable extrapolations from the evidence established by a preponderance of the evidence at the sentencing proceeding." *United States v. Treacy*, 639 F.3d 32, 48 (2d Cir. 2011) (internal quotation marks and citations omitted).

We conclude that sufficient evidence supports the district court's forfeiture calculations in this case. The district court's forfeiture calculations were reasonably based on, *inter alia*, an affidavit from Special Agent Christopher DeGraff, which conservatively estimated that 1,610 of the firms' applications were granted between 2007 and 2012, and trial testimony that virtually all of firms' asylum applications were fraudulent. The estimate of the total number of granted applications in Special Agent DeGraff's affidavit was based on an investigation and review of reports compiled by the Department of Homeland Security ("DHS"). Although Yuchang Miao challenges the accuracy of Special Agent Degraff's affidavit on the grounds that the underlying DHS records were not produced, a court may rely on a sentencing submission even without production of specific documentation. *See United States v. Roberts*, 660 F.3d 149, 165-66 (2d Cir. 2011).

We have considered Defendants' remaining arguments and find them to be without merit. We therefore **AFFIRM** the judgments of the district court. Yuchang Miao's motion to disregard the brief filed by his previous counsel is **GRANTED**.[3]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[3] Yuchang Miao also requests that he be allowed to incorporate the sentencing arguments of his wife and co-defendant, Feng Ling Liu, in case number 14-4390-cr, which is not a part of the consolidated appeal. Although Feng Ling Liu makes similar sentencing arguments, the facts and reasoning are unique to her. Feng Ling Liu also makes the same forfeiture calculation arguments as those addressed above. We therefore decline Yuchang Miao's request to incorporate Feng Ling Liu's arguments into his brief.