15-776-cr
U.S. v. Gabinskaya

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

————

August Term, 2015

(Argued: June 6, 2016     Decided: July 12, 2016)

Docket No. 15-776-cr

————

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

TATYANA GABINSKAYA, AKA Sealed Defendant 24,

*Defendant-Appellant,*

MIKHAIL ZEMLYANSKY, AKA Sealed Defendant 1, AKA Mike Zemlin, AKA
Russian Mike, AKA Mike Z, AKA Zem, MICHAEL DANILOVICH, AKA Sealed
Defendant 2, AKA Mike Daniels, AKA Fat Mike, AKA Mike D, YURIY ZAYONTS,
AKA Sealed Defendant 3, AKA KGB, MIKHAIL KREMERMAN, AKA Sealed
Defendant 4, MATTHEW CONROY, AKA Sealed Defendant 5, MICHAEL BARUKHIN,
AKA Sealed Defendant 6, AKA Barkin, AKA Mike B, MIKHAIL OSTRUMSKY, AKA
Sealed Defendant 7, AKA Skinny Mike, BORIS TREYSLER, AKA Sealed Defendant
8, AKA Borya, ANDREY ANIKEYEV, AKA Sealed Defendant 9, VLADIMIR GRINBERG,
AKA Sealed Defendant 10, VLADISLAV ZARETSKIY, AKA Sealed Defendant 11,
YEVGENIY SHUMAN, AKA Sealed Defendant 12, AKA Eugene, AKA Lokh, AKA
Zhenya, DMITRY SLOBODYANSKY, AKA Sealed Defendant 13, AKA Dima,
ALEXANDER SANDLER, AKA Sealed Defendant 14, AKA Sasha, AKA Nose,

GREGORY MIKHALOV, AKA Sealed Defendant 15, MICHAEL MORGAN, AKA Sealed Defendant 16, MARK DANILOVICH, AKA Sealed Defendant 17, JEFFREY LEREAH, AKA Sealed Defendant 18, DMITRY LIPIS, AKA Sealed Defendant 19, AKA Dima, AKA Danny, LYNDA TADDER, AKA Sealed Defendant 20, MARIA DIGLIO, AKA Sealed Defendant 21, SOL NAIMARK, AKA Sealed Defendant 22, SERGEY GABINSKY, AKA Sealed Defendant 23, JOSEPH VITOULIS, AKA Sealed Defendant 25, LAURETTA GRZEGORCZYK, AKA Sealed Defendant 26, AKA Dr. G, EVA GATEVA, AKA Sealed Defendant 27, ZUHEIR SAID, AKA Sealed Defendant 28, DAVID D. THOMAS, BILLY N. GERIS, AKA Sealed Defendant 30, MARK ALAN SHAPIRO, AKA Sealed Defendant 31, ROBERT DELLA BADIA, AKA Sealed Defendant 32, MICHELLE GLICK, AKA Sealed Defendant 33, PAVEL POZNANSKY, AKA Sealed Defendant 34, AKA Paul, CHAD GREENSHNER, AKA Sealed Defendant 35, CONSTANTINE VOYTENKO, AKA Sealed Defendant 36, DIANA ZAIDMAN, IRINA ZAYONTS, MILAN DIKKER, RICK DIBIASI, MIKHAIL BAKHRAHK, JOHN MAURELLO, IGOR KATSMAN,

*Defendants.*[*]

_____

B e f o r e :

SACK AND LYNCH, *Circuit Judges*, and MURTHA, *District Judge*.[**]

_____

Defendant-Appellant Tatyana Gabinskaya appeals from a judgment of conviction on various fraud and conspiracy charges, entered in the United States District Court for the Southern District of New York (J. Paul Oetken, *J.*). The

---

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

[**] The Honorable J. Garvan Murtha of the United States District Court for the District of Vermont, sitting by designation.

indictment charged that Gabinskaya had conspired to defraud insurance companies in connection with claims under New York's No Fault Comprehensive Motor Vehicle Insurance Reparation Act, N.Y. Ins. Law § 5102 *et seq.*, which requires that a medical services professional corporation providing treatment under the Act be owned by a licensed physician. Gabinskaya, a licensed physician, held herself out as the owner of one such professional corporation, but the government contended that coconspirator nonphysicians were the true owners who actually controlled and operated the corporation. Gabinskaya argues that the jury should have been instructed to consider only the formal indicia of ownership, and not such questions as who controlled the operation of the corporation and bore the financial risk. We disagree, because New York law is clear that ownership for purposes of the No Fault statute means more than mere paper ownership and that factors beyond formal indicia of ownership may be considered by a fact-finder in determining ownership under New York's no-fault insurance laws.

AFFIRMED.

————————

SEAN M. MAHER, New York, NY, *for Defendant-Appellant*.

AMANDA KRAMER (Margaret Garnett, *on the brief*),
Assistant United States Attorneys, *for* Preet Bharara,
United States Attorney for the Southern District of New
York, New York, NY.

————————

GERARD E. LYNCH, *Circuit Judge*:

Defendant-Appellant Tatyana Gabinskaya appeals from a judgment of

conviction, entered on March 3, 2015, in the United States District Court for the

Southern District of New York (J. Paul Oetken, *J.*), following a two-week jury

3

trial. Gabinskaya was found guilty of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, health care fraud in violation of 18 U.S.C. § 1347, conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349, and mail fraud in violation of 18 U.S.C. § 1341, and sentenced to one year and one day in prison.

The indictment charged that Gabinskaya participated in a broad scheme involving a number of medical services professional corporations ("PCs") to defraud insurance companies in connection with claims submitted under New York's No Fault Comprehensive Motor Vehicle Insurance Reparation Act, N.Y. Ins. Law § 5102 *et seq.* New York law requires medical PCs to be owned by licensed physicians, *see* N.Y. Bus. Corp. Law § 1507(a) ("A professional service corporation may issue shares only to individuals who are authorized by law to practice in this state a profession which such corporation is authorized to practice . . . ."), and provides that a medical provider that is not properly licensed is ineligible to receive reimbursement under the no-fault insurance regime, *see* N.Y. Comp. Codes R. & Regs. tit. 11, § 65–3.16(a)(12) ("A provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement . . . .").

Gabinskaya, a licensed physician, held herself out as the owner of a PC, Clearview of Brooklyn Medical P.C. ("Clearview"), and represented herself as such on claims submitted by Clearview. While Gabinskaya was the owner on paper, the jury found that the true owners of the clinic were coconspirator nonphysicians, Mikhail Zemlyansky and Michael Danilovich, who actually controlled and operated Clearview, took the profits from its operation, and bore the risk of loss. Gabinskaya principally contends that the jury should have been instructed, in determining the question of ownership, to consider only the formal indicia of ownership, and not the economic realities. We disagree because New York law is clear that ownership for purposes of New York insurance law is based on actual economic ownership. We hold that, as in the civil context, a factfinder in a criminal case may properly consider factors beyond formal indicia of ownership in determining ownership under New York's no-fault insurance laws. For the reasons that follow we reject all of Gabinskaya's arguments on appeal, and AFFIRM the judgment of the district court.

**BACKGROUND**

The following facts are based on the evidence at trial, which we take in the light most favorable to the verdict. *United States v. Gowing*, 683 F.3d 406, 408 (2d Cir. 2012).

5

Zemlyansky and Danilovich operated a large-scale scheme to defraud insurance companies by submitting false claims under New York's no-fault insurance laws for medical services allegedly provided by various PCs under their control. Under New York law, PCs providing medical services to no-fault insurers must be owned by licensed physicians. *See* N.Y. Bus. Corp. Law § 1507(a). As part of their scheme, Zemlyansky and Danilovich recruited and paid licensed physicians to open PCs specializing in providing medical services that car accident victims might need. Gabinskaya was one such physician.

Gabinskaya signed incorporation paperwork forming Clearview as a PC, and documents to open its bank accounts. In actual fact, however, Gabinskaya was merely a front whose medical license permitted Clearview to submit insurance claims. Zemlyanksy and Danilovich, who were not physicians, controlled and operated the clinic, with no actual oversight by Gabinskaya, in such a way as to maximize the insurance payout from the statutory pool of no-fault automobile insurance, which covers up to $50,000 in medical expenses for each individual injured in a car accident in New York state. The existence of this scheme was not disputed at trial; Gabinskaya challenges only her knowing participation in the scheme.

The evidence at trial demonstrated that Gabinskaya played no role at Clearview. She did not see patients. She did not supervise employees. She was rarely present at the clinic. Three Clearview employees testified that they were unaware of Gabinskaya's having any role with respect to Clearview, and testified that they understood Zemlyansky and Danilovich to be the owners of the clinic.

Nor did Gabinskaya bear the financial risk of the success or failure of the scheme. Instead, Zemlyansky and Danilovich paid her a flat fee of $1,500 per week. Danilovich acknowledged Gabinskaya's role in a recorded phone call. When referring to another doctor whom the coconspirators were attempting to recruit to become a paper owner of a PC, and who apparently intended to take some role in managing the PC, Danilovich contrasted the intended arrangement with the relationship with Gabinskaya, saying, "It's not going to be like a, let's say, Tatyana, you know what I mean, 1500 bucks and that's it, keep it moving." A. 1132.

In December 2010 and January 2011, Gabinskaya was required by Allstate Insurance to submit to an examination under oath ("EUO") regarding insurance claims which had been submitted by Clearview. During the EUO, Gabinskaya stated that she worked at Clearview "three hours per day," "two, three times a

week" during which times she approved days off and conducted a "five, ten minute interview" of all new patients "to determine which MRI comes first." A. 667. Of course, this testimony contradicted the testimony set forth above by the three Clearview employees. During the EUO, Gabinskaya specifically named Adelaida Martinez as a patient that she had personally interviewed prior to Martinez's receiving care. Martinez, however, testified that she came to Clearview for an MRI, and was never interviewed or otherwise seen by *any* doctor at the clinic, much less Gabinskaya.

**DISCUSSION**

**I.      Sufficiency of the Evidence**

Gabinskaya argues that the evidence was insufficient to establish her role either as a fraudulent straw owner or as a knowing and willful coconspirator. "A defendant challenging the sufficiency of the evidence bears a heavy burden . . . ." *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011). While we review a claim of insufficient evidence de novo, *see United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004), a jury verdict must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The evidence adduced at trial was sufficient for a rational jury to find Gabinskaya's knowing and willful participation in the scheme as the straw owner of Clearview. As discussed above, Gabinskaya signed the necessary paperwork in order for her coconspirators to open and operate Clearview, but did not exercise any control over its operations, or participate in its business or medical decisions. Gabinskaya did not see patients or supervise employees. Rather, the clinic was controlled and operated solely by Zemlyansky and Danilovich. Nor did Gabinskaya fund Clearview's operations or share in the profits or the risk of loss, instead receiving a fixed payment of $1,500 per week.

Gabinskaya's knowledge of the fraudulent nature of the scheme was also sufficiently proved. Most tellingly, Gabinskaya falsely testified during the EUO that she worked at the clinic two to three times per week, supervised employees, and interviewed patients, including Adelaida Martinez, testimony which was directly contradicted by other evidence admitted at trial. Such false testimony permits a reasonable jury to infer consciousness of wrongdoing. Gabinskaya's perjurious statements were all designed to portray Gabinskaya as involved in or controlling Clearview's operations, as is necessary under New York State law. The jury was entitled to conclude from Gabinskaya's false testimony during the

9

EUO, along with the totality of the evidence, that Gabinskaya understood that, in order for Clearview lawfully to submit no-fault insurance claims, she, as a licensed physician, had to be not merely its paper owner but rather its actual owner, and that she knowingly participated in the fraudulent scheme with the intent to further its aims by misrepresenting her role at Clearview. Gabinskaya's challenge to the sufficiency of the evidence therefore fails.

**II.    Jury Instruction**

Gabinskaya's sufficiency argument really hinges on the contention that as a matter of New York law, ownership of a PC is solely a matter of corporate formality.  Accordingly, she argues that the jury was improperly instructed on the definition of "ownership" in connection with the no-fault insurance system. In advance of trial, Gabinskaya asked the district court to instruct the jury that "ownership" is defined purely formally, requesting that the jury be instructed as follows: "If you find from the evidence that the doctors were the shareholders of the PCs, then you must conclude that they were the owners of the PCs." A. 180. The district court ultimately rejected this request, and instructed the jury to determine ownership for purposes of the relevant regulations by considering factors such as "responsibility for the financial risk" of the PC, and "domination

10

and control" over the PC, as well as various indicia of "formal" ownership. A.

1647-48. We agree with the district court that the jury instructions were in accord

with New York law regarding the meaning of "ownership" for purposes of New

York's no-fault insurance laws.

As a general matter, no particular wording is required for a jury instruction

to be legally sufficient, but rather, this Court must "look to the charge as a whole

to determine whether it adequately reflected the law and would have conveyed

to a reasonable juror the relevant law." *United States v. Mulder*, 273 F.3d 91, 105

(2d Cir. 2001) (internal quotation marks omitted). We review "a properly

preserved claim of error regarding jury instructions *de novo*, reversing only

where, viewing the charge as a whole, there was a prejudicial error." *United States*

*v. Coplan*, 703 F.3d 46, 87 (2d Cir. 2012) (internal quotation marks omitted).

In order to be entitled to receive reimbursement from a no-fault insurer, a

medical services PC must be owned by a licensed physician. *See* N.Y. Bus. Corp.

Law § 1507(a); N.Y. Comp. Codes R. & Regs. tit. 11, § 65–3.16(a)(12). Under New

York law, such ownership has been authoritatively held to mean more than

merely formal ownership of stock certificates. In 2005, the New York Court of

Appeals, in answering a question certified by this Court, held that insurers may

11

properly refuse to pay no-fault insurance claims submitted by medical services PCs that do not comply with New York's valid licensing requirements, which "prohibit nonphysicians from owning or controlling medical service corporations." *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 320-21 (2005). In determining what constitutes "ownership" of a PC for purposes of determining whether insurance companies are obliged to reimburse the PC for medical services, the *Mallela* court held that where "unlicensed defendants paid physicians to use their names on paperwork filed with the State to establish medical service corporations," and "nonphysicians actually operated the companies," the physicians were not the true owners of the PC, and the arrangement constituted fraud. *Id*. at 319-20. The court further held that it is appropriate to "look beyond the face of licensing documents," *id*. at 321, in order to combat fraud in "the corporate practice of medicine by nonphysicians," *id*. at 320 n.2. Thus, nominal or "paper" ownership is not enough for compliance with the regulatory scheme. *See id.* at 321. *Mallela* was decided, and these principles of law established, well before Gabinskaya's conduct in this case.

Since *Mallela*, other federal and state courts in New York have reaffirmed the understanding that "ownership" of a PC within the meaning of the no-fault

insurance laws looks to the realities of actual control of the PC, including the economic risks and benefits of the enterprise, as well as the formal indicia of ownership, and that misrepresenting ownership status for purposes of securing insurance reimbursement constitutes fraud. In a civil RICO case in which "[a]ll of the PCs involved were owned on paper by licensed medical doctors ('paper owners')" but "were in fact controlled by other individuals or entities that were not doctors ('actual owners')," a district court in the Eastern District of New York held that "a health care provider that is fraudulently licensed – because it is in fact owned or controlled by non-physicians – makes a misrepresentation when it claims eligibility for reimbursement." *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 366, 371 (E.D.N.Y. 2012). The district court in that case concluded that "it is easy to find that Allstate has adequately pled fraudulent incorporation" because the factual allegations in that case, similar to those in the instant case, "are more than sufficient to raise the reasonable inference that [the medical PC] was actually owned and controlled not by [the paper owner], who is a physician, but by nonphysicians." *Id.* at 371-72; *see also, e.g., Andrew Carothers, M.D., P.C., v. Progressive Ins. Co.*, 979 N.Y.S.2d 439, 445-47 (App. Div. 2d Dep't 2013) (upholding civil jury verdict on denial of claims for "fraudulent incorporation"

13

under *Mallela*, and affirming trial court's instructions on thirteen factors to assist the jurors in making an assessment as to whether the physician nominal owner, or the nonphysician controller, was in fact the true "owner" of the medical PC).

Gabinskaya does not argue that any of the individual factors the jury was instructed to consider, such as responsibility for the financial risk of the PC and domination and control over the PC, as well as various indicia of formal ownership, were improper, nor that any different or additional factors should have been included. We therefore have no occasion to consider whether the district court's instruction could or should have included other matters. Gabinskaya's argument is that the jury's consideration should have been limited solely to formal indicia of ownership. We reject that argument, and hold that, as in the civil context, a factfinder in a criminal case concerning no-fault insurance fraud in New York may consider factors beyond formal ownership in the context of fraudulent incorporation of a PC, which serves the State's interests both in preventing fraud and in preventing nonphysicians from practicing medicine.

**III.    Evidentiary Contention**

Gabinskaya also argues that the district court erred by excluding from evidence documents reflecting attorney Gerard Tanella's misconduct,

14

suspension, and disbarment. Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. However, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Trial courts enjoy considerable discretion to decide evidentiary issues, *see, e.g.*, *United States v. Khalil*, 214 F.3d 111, 122 (2d Cir. 2000), and our review "is highly deferential in recognition of the district court's 'superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice,'" *United States v. Coppola*, 671 F.3d 220, 244 (2d Cir. 2012), quoting *United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010).

The fact that an unethical lawyer was employed by Gabinskaya's coconspirators to handle some of the financial arrangements for the fraudulent scheme has little or no bearing on Gabinskaya's knowing involvement in the scheme. No evidence in the record suggests that Gabinskaya received or relied upon any advice from Tanella that her role in the scheme was lawful. That an

15

attorney hired by her coconspirators may have stolen money from other clients is not probative of Gabinskaya's guilt or lack of guilt, and could easily have confused the jury and wasted time by diverting attention from the evidence relevant to Gabinskaya's conduct to the details of Tanella's unethical behavior. The district court accordingly acted well within its considerable discretion in excluding the evidence.

**IV.    New Trial Motion**

Finally, Gabinskaya argues that the district court erred when it denied Gabinskaya's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 because of the cumulative effect of the above alleged errors. This Court reviews the district court's denial of a motion under Rule 33 for abuse of discretion. *United States v. Rigas*, 583 F.3d 108, 125 (2d Cir. 2009). Because we have rejected the claims of insufficient evidence, erroneous jury instructions, and improperly excluded evidence on which Gabinskaya's request for a new trial is predicated, she cannot demonstrate that the district court abused its discretion in denying her motion. *See United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990) ("[A] cumulative-error analysis aggregates only actual errors to determine their cumulative effect.").

## CONCLUSION

For the foregoing reasons, we conclude that all of Gabinskaya's arguments are without merit, and we therefore AFFIRM the judgment of the district court.