21-885-cr (L)
*United States v. Hernandez*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of January, two thousand twenty-four.

**PRESENT:**
> **GUIDO CALABRESI,**
> **ALISON J. NATHAN,**
> > *Circuit Judges.*
> **SARALA V. NAGALA,**
> > *District Judge.*

_____

**United States of America**

> *Appellee,*

> v.

**Victor Hugo Diaz Morales, AKA Victor**
**Hugo Villegas Castillo, AKA Rojo, Mario**
**Jose Calix Hernandez, Mauricio**
**Hernandez Pineda, Amado Beltran**

**No. 21-885-cr (L),**
**22-334 (Con)**

Beltran, AKA Don Amado, Otto Rene Salguero Morales, AKA Otto Salguero, Ronald Enrique Salguero Portillo, AKA Ronald Salguero, Fernando Felix Rodriguez, AKA Don Fernando,

*Defendants*,

Juan Antonio Hernandez Alvarado, AKA Tony Hernandez, Geovanny Fuentes Ramirez, AKA Sealed Defendant 1,

*Defendants-Appellants.*

_____

**FOR DEFENDANT-APPELLANT JUAN ANTONIO HERNANDEZ ALVARADO:**

JESSE M. SIEGEL, Law Office of Jesse Siegel, New York, NY.

**FOR DEFENDANT-APPELLANT GEOVANNY FUENTES RAMIREZ:**

JAY S. OVSIOVITCH, Federal Public Defender's Office, Western District of New York, Rochester, NY.

**FOR APPELLEE:**

JACOB H. GUTWILLIG (Jason Richman, Hagan Scotten, *on the briefs*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

2

Appeal from judgments of the United States District Court for the Southern District of New York (Castel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

In these consolidated appeals, Defendants-Appellants Juan Antonio Hernandez Alvarado (Hernandez) and Geovanny Fuentes Ramirez (Fuentes Ramirez) appeal from judgments of the United States District Court for the Southern District of New York (Castel, *J.*) convicting them following separate jury trials for their roles in a large-scale conspiracy to traffic cocaine from Honduras into the United States. On March 31, 2021, Hernandez was convicted of conspiring to import cocaine into the United States in violation of 21 U.S.C. § 963, using and conspiring to use machineguns in furtherance of that conspiracy in violation of 18 U.S.C. § 924(c) and (o), and making false statements to law enforcement in violation of 18 U.S.C. § 1001. On February 8, 2022, Fuentes Ramirez was similarly convicted of conspiring to import cocaine into the United States and using and conspiring to use machineguns in furtherance of the

3

conspiracy, in violation of 21 U.S.C § 963 and 18 U.S.C. § 924(c) and (o).   Both were sentenced principally to life imprisonment followed by a mandatory consecutive term of 30 years' imprisonment.

Hernandez and Fuentes Ramirez raise a variety of claims arising from their separate trials.   We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I. Hernandez's Trial

Hernandez advances three claims on appeal that he argues warrant vacating his conviction.   First, he argues that statements he made without counsel during a post-arrest interview were wrongly admitted at trial because the interview violated professional ethical rules applying to government attorneys, the Fifth Amendment, and the Sixth Amendment.   Second, he argues that improper prosecutorial comments during summation deprived him of a fair trial in violation of due process.   And third, he argues that the district court failed to adequately investigate potential juror misconduct or bias after an alternate juror raised concerns about his safety in a note to the court.   We consider each argument in turn.

## A. The Post-Arrest Statement

Hernandez was arrested by Customs and Border Patrol agents in 2018 at the Miami International Airport, having already been indicted.   Shortly thereafter, he gave a recorded interview without counsel to agents from the Drug Enforcement Administration (DEA), in which he admitted to knowing various drug traffickers in Honduras and receiving offers to work with them but denied involvement in any drug trafficking with them.   Hernandez unsuccessfully moved to suppress the interview.

On appeal, Hernandez advances the same arguments for suppression that the district court rejected.   He argues that government attorneys directed the DEA agents to interview him without counsel present despite knowing he was represented by counsel, in violation of applicable ethics rules for attorneys, and that the agents interviewed him without counsel despite his invocation of his right to counsel under the Fifth and Sixth Amendments.   In an appeal challenging the denial of a suppression motion, we review the district court's factual findings for clear error and its legal holdings *de novo*.   *United States v. Stewart*, 551 F.3d 187, 190-91 (2d Cir. 2009).

The no-contact rule generally prohibits an attorney from directly contacting

5

a party regarding a matter when the attorney knows the party is represented by a lawyer in that matter. *See United States v. Hammad*, 858 F.2d 834, 837 (2d Cir. 1988). In *Hammad*, we held that suppression can be warranted for statements obtained by prosecutors in violation of the no-contact rule. *See id.* at 840.

In addition, the Fifth Amendment provides a right to counsel in custodial interrogations and the Sixth Amendment provides a right to counsel in critical proceedings (including interrogations) after criminal proceedings have commenced. *See Edwards v. Arizona*, 451 U.S. 477, 481-82 (1981); *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). An individual can waive the right to counsel under both amendments, if that waiver is knowing, voluntary, and intelligent. *See United States v. Gonzalez*, 764 F.3d 159, 166 (2d Cir. 2014); *Montejo*, 556 U.S. at 786. Moreover, even after invoking the right to counsel under either amendment, an individual may reinitiate interrogation and then validly waive the right. *See Montejo*, 556 U.S. at 798; *Gonzalez*, 764 F.3d at 166 (citing *Edwards*, 451 U.S. at 485).

Here, after Hernandez told the DEA agents who arrested him that he wished to cooperate, the agents asked him, in Spanish, if he currently had a lawyer. Hernandez replied that he had not spoken in over a year to Manuel Retureta, an attorney who represented him in connection with a proffer to the government that

6

occurred approximately two years prior, but that he "would like to call him first." Hernandez App'x at 116. After getting permission from two Assistant United States Attorneys (AUSAs), the agents then attempted to call Retureta but were unable to reach him. The agents consulted with the AUSAs again, who advised them not to interview Hernandez at that time. In addition to knowing of Retureta's representation of Hernandez at the earlier proffer, one of the AUSAs had also received an email from Retureta about Hernandez roughly a year and a half before the arrest.

However, after the agents informed Hernandez that they were going to process him and take him to jail without an interview, Hernandez "stated that he wanted to speak with Agents at this moment and start cooperating." *Id.* At that point, the agents again tried unsuccessfully to reach Retureta. They again asked if Hernandez currently had a lawyer, to which he responded that he did not know. With this information, the AUSAs then told the agents to proceed with an interview. The agents advised Hernandez of his rights, Hernandez stated that he understood his rights, and Hernandez read and signed a form waiving his *Miranda* rights before proceeding with the interview.

When the videotaped interview began, the agents confirmed, on the record,

7

the bottom line of their earlier exchange with Hernandez. One stated, "I just want . . . to repeat here what you told me earlier. That you wish to proceed and make a statement and talk with us." Hernandez App'x at 55. The agent continued: "You do not have legal representation today . . . now. . . . You will be talking to a lawyer in the future, but you wish to start this process now." *Id.* Hernandez then replied: "That's right. I want to start." *Id.* On this record, we agree with the district court that the post-arrest interview should not have been suppressed.

First, admitting statements from the interview did not run afoul of *Hammad*. The relevant rule governing the AUSAs' conduct prohibits a lawyer from communicating about a matter "with a party the lawyer knows to be represented by another lawyer in the matter." N.Y. R. Prof'l Conduct 4.2(a). A comment to the rule clarifies that "know" here means actual knowledge: "This means that the lawyer has actual knowledge of the fact of the representation; but such knowledge may be inferred from the circumstances." *Id.* cmt. 8; *see also* N.Y. R. Prof'l Conduct 1.0(k) ("'Knowingly,' 'known,' 'know,' or 'knows' denotes actual knowledge of the fact in question."). Based on the record of the interactions between the AUSAs, the DEA agents, and Hernandez, as well as statements made by the AUSAs on the record in the suppression hearing, the district court

concluded that the attorneys did not have actual knowledge that Hernandez had legal counsel at the time—a finding with which we see no clear error.

Hernandez cites one case from an intermediate New York appellate court suggesting that, notwithstanding the text of the rule, it can be violated when attorneys merely *should have known* that a witness was represented by counsel. *See In Re Izzo*, 155 A.D.3d 109, 111-12 (N.Y. App. Div. 2017); *but see Grievance Comm. for S. Dist. Of N.Y. v. Simels*, 48 F.3d 640, 645-46 (2d Cir. 1995) (concluding that the interpretation of New York's no-contact rule "as it applies to federal criminal law practice should be and is a matter of federal law").   We do not need to resolve this issue, because there is insufficient evidence in the record to support even that form of constructive knowledge here.   The government attorneys knew that Retureta had represented Hernandez in a proffer having to do with events underlying the present indictment, but they had not heard from Retureta regarding Hernandez in roughly a year and a half.   And according to Hernandez, he had lost touch with Retureta and did not know if he had any legal representation.   Based on these facts, we cannot conclude that the AUSAs should have known better than Hernandez himself whether he was represented by Retureta.

Second, the interview did not violate Hernandez's right to counsel under

9

the Fifth and Sixth Amendments. Assuming for the sake of argument that Hernandez's statement that he would like to call Retureta—in response to the question of whether he had a lawyer—was a clear and unequivocal invocation of his right to counsel, he then voluntarily reinitiated conversation with the DEA agents. As the district court found, after the agents told him he would be processed without an interview, he told the agents—without being asked any further questions—that he wanted to speak to them "at th[at] moment and start cooperating." Hernandez App'x at 116. It was thus Hernandez, not the DEA agents, who initiated the questioning. The record shows that Hernandez then voluntarily and knowingly waived his right to counsel when he signed a waiver of his *Miranda* rights. *See Montejo*, 556 U.S. at 786-87 (noting that waiver of *Miranda* rights is typically sufficient to waive Sixth Amendment right to counsel). Statements from the interview were therefore properly admitted at trial. *Cf. United States v. Gonzalez*, 764 F.3d at 166-67 (finding that previously invoked right to counsel was subsequently waived when defendant reinitiated conversation with law enforcement).

## B. Prosecutorial Misconduct

Hernandez takes issue with some of the remarks made by the prosecution

during summation, claiming that the prosecution improperly attacked the integrity and motives of defense counsel before the jury. In seeking a new trial on this alleged prosecutorial misconduct, Hernandez faces a "heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of his right to a fair trial." *United States v. Banki*, 685 F.3d 99, 120 (2d Cir. 2012) (cleaned up). He fails to carry that burden in this case.

"The prosecution and the defense are generally entitled to wide latitude during closing arguments, so long as they do not misstate the evidence." *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998). Even if the prosecution makes improper comments, we will reverse only when the comments resulted in substantial prejudice, which we evaluate based on "the severity of the alleged misconduct, the measures adopted to cure it, and the certainty of conviction absent the misconduct." *Id.* "[R]arely will an improper summation meet the requisite level of prejudice." *United States v. Daugerdas*, 837 F.3d 212, 227 (2d Cir. 2016) (quotation marks omitted). Finally, where, as here, a party fails to object to the remarks, we review for plain error—which in this context means that we will reverse only if we find "flagrant abuse" that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Carr*, 424

11

F.3d 213, 227 (2d Cir. 2005) (quotation marks omitted).

On this standard, the prosecution's comments identified by Hernandez do not warrant reversal. The prosecution's comments to the jury that certain arguments advanced by defense counsel were "[w]rong," "just wrong," and "[a]bsolutely false," as well as its comment that "[n]othing that the defense counsel argues now can change the facts that are in evidence," reflect permissible advocacy and argument. Nor did the prosecution overstep by characterizing the defense's attacks on witness credibility and chains of custody for physical evidence as distractions. *See United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012) ("[W]e do not think it improper or excessive, without more, for a prosecutor to criticize defense arguments as merely being attempts to 'grasp at straws' or 'focus on distractions.'"); *Carr*, 424 F.3d at 227 ("[T]he government is allowed to respond to an argument that impugns its integrity or the integrity of the case . . . ."); *United States v. Rivera*, 971 F.2d 876, 883 (2d Cir. 1992) (allowing remarks in prosecution's initial and rebuttal summations that defense arguments were "'smoke screens,' game-playing, distractions, and distortions").

This was certainly not "flagrant abuse." *Carr*, 424 F.3d at 227. We thus find no violation of Hernandez's right to a fair trial based on the prosecution's

12

remarks.

## C. Investigation of Juror Note

During the trial, an alternate juror transmitted a note to Judge Castel in which he expressed concerns about the safety of the jury and whether "it would be in the interests of several parties to interfere with the jury either in the form of persuasion or worse," since "the traffickers have the means, money, and motive to try something nefarious." Hernandez App'x at 768. The note added, "This in no way affects my impartiality, nor have I mentioned it to the other jury members." *Id.* Finally, it contained an additional message on the reverse side apparently added a day later: "Since writing this note yesterday, myself and at least one other juror noticed we were photographed at close range just outside the courthouse by what appeared to be an individual with no media logo or identification. The photo was taken on a cellphone." *Id.* The district court dismissed the alternate juror with the parties' agreement, but, reasoning that the juror had not communicated these concerns to any others and "loathe [sic] to conduct an inquiry which plants the seeds of concern where they may not exist," the court did not pursue further investigation into potential jury intimidation or bias as requested by defense counsel. *Id.* at 775-78.

13

On appeal, Hernandez argues that failure to investigate this matter further deprived him of his rights to due process and a trial by an impartial jury. "A district court's investigation of juror misconduct or bias is a delicate and complex task." *United States v. Cox*, 324 F.3d 77, 86 (2d Cir. 2003) (internal quotation marks omitted). We review the court's handling of such matters for abuse of discretion, aware that the district court "has broad flexibility in such matters . . . ." *Id.* (quotation marks omitted). In particular, the court must balance its obligation to "investigate and, if necessary, correct a problem" with the need to "avoid tainting a jury unnecessarily." *Id.* at 88. Accordingly, "[i]n this endeavor, sometimes less is more." *Id.* We hold that the district court did not abuse its discretion in handling this matter.

Here, the note did not evidence any jury problems beyond the alternate juror's own individual concerns about "nefarious" traffickers. The alternate juror adhered to the instructions of the court, which informed jurors at the outset as follows: "[I]f it becomes necessary to send the Court a note about something you saw or heard or about any other matter, do not share the content of the note with your fellow jurors." Hernandez App'x at 233. The alternate juror's note explicitly stated that he had not discussed his safety concerns with anyone else.

14

Nor does the note's additional mention of "at least one other juror notic[ing]" being photographed suggest that any discussion took place among the jury or evidence any other improper jury communications. Hernandez App'x at 768. And questioning jurors about the incident could have unnecessarily magnified the event, causing more harm than good.

Hernandez suggests that the court should have questioned the alternate juror outside the presence of the rest of the jury as to whether he discussed his concerns with others, before dismissing him. This approach could have provided additional assurance that the jury had not been tainted in any way without sowing unnecessary concerns. But it was not an abuse of discretion to decline to adopt that approach, and instead to accept the juror's representation that he had not spoken with anyone about his safety concerns—which the note's mention of the photography incident does not contradict. *See Cox*, 324 F.3d at 87 ("[A] court should generally presume that jurors are being honest."). In dismissing the alternate juror without conducting a further investigation into the rest of the jury, the district court did not exceed the bounds of the "broad flexibility" it is afforded in managing such matters. *Id.* at 86 (quotation marks omitted); *cf. United States v. Abrams*, 137 F.3d 704, 708 (2d Cir. 1998) (finding no abuse of discretion when

15

district court declined further investigation of juror note that "did not explain the nature of any discussions [among jurors] or even indicate whether such discussions had taken place"). We therefore reject Hernandez's argument and, having rejected all of his arguments on appeal, will affirm his conviction.

## II. Fuentes Ramirez's Trial and Sentence

Fuentes Ramirez also advances three claims on appeal, broadly speaking. First, he makes several related arguments about the statute of limitations for his charges. He claims that the charges against him were time-barred, that the district court should have instructed the jury on the statute of limitations, and that his trial counsel was constitutionally ineffective for not requesting a specific jury instruction on the issue. Second, Fuentes Ramirez argues that the district court abused its discretion in admitting various pieces of evidence and portions of testimony. And third, he argues that his sentence of life imprisonment is substantively unreasonable. As with Hernandez, we consider each of Fuentes Ramirez's arguments but conclude that none is availing.

### A. Statute of Limitations Arguments

Fuentes Ramirez makes several related arguments concerning the statute of limitations for the charges against him. First, he raises a sufficiency challenge,

16

claiming that there was not enough evidence at trial for a reasonable jury to conclude that the cocaine trafficking conspiracy he was accused of participating in continued into the limitations period. He argues that the government presented no evidence of acts in furtherance of the conspiracy after 2015, five years before he was indicted. *See* 18 U.S.C. § 3282(a) (providing five-year statute of limitations). He further argues that the conspiracy was abandoned in 2013 after he and co-conspirator Leonel Rivera ceased working together and Rivera began cooperating with the DEA. We review *de novo* a challenge to the sufficiency of evidence and "affirm if the evidence, when viewed in its totality and in the light most favorable to the government, would permit any rational jury to find the essential elements of the crime beyond a reasonable doubt." *United States v. Yanotti*, 541 F.3d 112, 120 (2d Cir. 2008) (quotation marks omitted). We conclude that is the case here.

As Fuentes Ramirez acknowledges, conspiracy is a continuing offense, for which the statute of limitations does not begin to run until the conspiracy is completed or abandoned. *See United States v. Eppolito*, 543 F.3d 25, 46-47 (2d Cir. 2008). Moreover, Fuentes Ramirez concedes that the government did not need to prove any overt acts for the specific drug conspiracy offense under which he was charged, let alone overt acts within the limitations period. *See United States v.*

17

*Grammatikos*, 633 F.2d 1013, 1023 (2d Cir. 1980); *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003) ("In such cases, once the government proves the conspiracy's existence, the scheme's continued operation into the limitations period is presumed . . . ."). Thus, whether or not the government proved overt acts in furtherance of the conspiracy after 2015 is of no moment.

As for Fuentes Ramirez's abandonment argument, the conspiracy the government charged and presented evidence to prove was far broader than a simple partnership between Fuentes Ramirez and Rivera. There was ample evidence, such as testimony from cooperating witnesses regarding Fuentes Ramirez's activities with an array of traffickers, politicians, and Honduran officials, from which the jury could reasonably conclude that he was a part of a broader cocaine trafficking conspiracy, which would not end simply because Rivera and Fuentes Ramirez ceased working together.

Fuentes Ramirez also argues that the district court erred by failing to instruct the jury on the statute of limitations, as he requested. "A conviction will not be overturned for refusal to give a requested charge unless that requested instruction is legally correct, represents a theory of [the] defense with [a] basis in the record that would lead to acquittal, and the theory is not effectively presented

18

elsewhere in the charge." *United States v. Holland*, 381 F.3d 80, 84 (2d Cir. 2004) (cleaned up). The defendant must also carry the "heavy burden of showing that the charge given was prejudicial." *United States v. Kukushkin*, 61 F.4th 327, 332 (2d Cir. 2023) (internal quotation marks omitted).

After the close of evidence, Fuentes Ramirez's counsel moved for a judgment of acquittal, arguing that no evidence demonstrated "any illegal activity by Mr. Fuentes in the statute of limitations period." Fuentes Ramirez App'x at 280. After the district court denied the motion, Fuentes Ramirez's counsel requested that the court instruct the jury on the statute of limitations based on this earlier argument. Counsel suggested that there was an appropriate instruction in Sand's Modern Federal Jury Instructions but never provided more detail on a specific instruction. In fact, as the district court discovered, the only instructions in Sand were for a different conspiracy offense, which requires proof of an overt act, and for the affirmative defense of withdrawal. *See* Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal § 19.01. As mentioned earlier, however, the drug conspiracy with which Fuentes Ramirez was charged does not require proof of an overt act during the limitations period. And he had not requested any withdrawal or abandonment instruction. Fuentes Ramirez thus

19

failed to request a legally correct instruction regarding the statute of limitations in this case.

To the extent that Fuentes Ramirez now argues that the district court erred by failing to instruct the jury on a *different* theory of the defense—that Fuentes Ramirez conspired only with Rivera and that the conspiracy was abandoned before the limitations period when Rivera began cooperating with the DEA—he did not request any such instruction. In his brief request he did not mention Rivera or abandonment at all and only referred to his earlier argument regarding a lack of acts in furtherance of the conspiracy during the limitations period.

Importantly, when the court instructed the jury, Fuentes Ramirez did not object. We therefore review any challenge to the instructions given for plain error. *See United States v. Crowley*, 318 F.3d 401, 412-414 (2d Cir. 2003). And it was not plain error for the district court to decline to provide, sua sponte, a jury instruction regarding an unpresented defense theory. *See United States v. Newton*, 677 F.2d 16, 17 (2d Cir. 1982) (holding that where defendant made only "a passing reference to the possibility of [a defense instruction] . . . the trial court was not under an obligation sua sponte to instruct the jury about the availability of such an affirmative defense"); *United States v. Brettholz*, 485 F.2d 483, 490 (2d Cir. 1973)

20

(concluding "it was not error, and certainly not 'plain error'" for court not to give unrequested instruction concerning an affirmative defense theory).

Lastly, Fuentes Ramirez argues that his trial counsel was constitutionally ineffective for failing to request a more specific instruction regarding the statute of limitations based on an abandonment argument. Lacking an appropriate record to evaluate counsel's strategic decisions, we deny this claim without prejudice to its being raised in a 28 U.S.C. § 2255 proceeding—the preferable avenue for raising this claim in the first instance. *See Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *United States v. Khedr*, 343 F.3d 96, 99-100 (2d Cir. 2003).

## B. Evidentiary Challenges

Fuentes-Ramirez also raises a variety of evidentiary challenges on appeal. "We review evidentiary rulings for abuse of the district court's broad discretion, reversing only when the court has acted arbitrarily or irrationally." *United States v. Nektalov*, 461 F.3d 309, 318 (2d Cir. 2006) (internal quotation marks omitted). Our "highly deferential" review is particularly sensitive to "the district court's superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice." *United States v. Gabinskaya*, 829 F.3d 127, 134 (2d Cir. 2016) (internal quotation marks omitted). As explained below,

we conclude that the district court did not abuse its discretion in admitting any of the evidence in dispute.

The district court did not abuse its discretion when it admitted evidence from the Instagram and iCloud accounts of Fuentes Ramirez's son, Geovanny Daniel Fuentes Gutierrez. Specifically, the court admitted photographs of large amounts of cash and of ammunition and various weapons, some of which were overlaid with text or a symbol referencing a slang word for "snitch." In addition to the statements in some of the photographs, the court also admitted statements from two online chats. The court held that all of the statements were admissible pursuant to the hearsay exclusion for statements of coconspirators. *See* Fed. R. Evid. 801(d)(2)(E). On appeal, Fuentes Ramirez claims in a single conclusory sentence that the photographs were substantially more prejudicial than probative. But he provides no reason to second-guess the district court's decision to admit the photographs, which together served as evidence probative of an ongoing conspiracy.

As for the statements, the court reasonably concluded that a preponderance of the evidence could show that Gutierrez was a coconspirator with Fuentes Ramirez and that the statements were made in furtherance of the conspiracy. *See*

22

*id*. The photographs support the conclusion that Gutierrez conspired with Fuentes Ramirez, as do emails between Fuentes Ramirez and Gutierrez discussing Fuentes Ramirez's cocaine laboratory. The disputed statements themselves also support the finding that the two conspired together. *See United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999) (noting that the challenged hearsay statement itself can be considered, alongside other evidence, in establishing the existence of a conspiracy for the purpose of the hearsay exclusion). In them, Gutierrez discusses looking into the murder of Fuentes Ramirez's bodyguards and the identity of coconspirators discovered by the government investigation that would eventually lead to Fuentes Ramirez's trial and conviction. And there is no clear error in the district court's determination that these statements concerning events related to the conspiracy were made in furtherance of it. *See United States v. Maldonado-Rivera*, 922 F.2d 934, 958-59 (2d Cir. 1990) (noting the applicable clear error standard of review and that "statements between coconspirators that may be found to be in furtherance of the conspiracy include statements that provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy").

Fuentes Ramirez principally argues that there was nothing dating this evidence to after 2013, when he argues the conspiracy terminated. But as summarized above, there was ample evidence from which to find a conspiracy continuing past that date—and so to find by a preponderance of the evidence that Gutierrez's statements were made in furtherance of an existing conspiracy including Fuentes Ramirez.

Fuentes Ramirez's second evidentiary claim regards the testimony of Leonel Rivera about statements that Fuentes Ramirez made to him while they were both in prison. Fuentes Ramirez argues that because Rivera was cooperating with the government, these statements should have been suppressed under *Massiah v. United States*, 377 U.S. 201, 204-06 (1964), which prohibits the government from circumventing the right to counsel by directing an agent to interrogate a defendant without counsel present. But, as the district court held, there was simply no evidence that the government ever instructed Rivera to approach Fuentes Ramirez in prison. Fuentes Ramirez devotes his efforts on appeal to arguing that the prison encounter was deliberate on the part of Rivera, but he never contests, let alone refutes, the district court's reasoning. Because there was no evidence that the government directed Rivera to approach and elicit information from Fuentes

24

Ramirez, the motion to suppress was properly denied. *See United States v. Whitten*, 610 F.3d 168, 193 (2d Cir. 2010).

Lastly, Fuentes Ramirez argues that testimony from Jorge Medina, an agricultural engineer who had business dealings with Fuentes Ramirez, was irrelevant and that the probative value of the testimony was substantially outweighed by its unfair prejudice and tendency to mislead the jury. *See* Fed. R. Evid. 403. We disagree. Medina testified that Fuentes Ramirez had police seize a shipment of agricultural cargo from one of his trucks after a dispute. The government presented this testimony to show Fuentes Ramirez's ability to exercise control over Honduran police for his own ends, which it alleged he did in other circumstances in furtherance of his drug trafficking activities. This tendency to make the government's case more likely to be true is sufficient to clear the "very low standard for relevance." *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008).

As for unfair prejudice and the risk of misleading the jury (*i.e.* to think that the events Medina testified to could themselves prove the charged cocaine trafficking conspiracy), the district court gave the jury a limiting instruction. It told the jury that Medina's testimony did not "relate to activities of the defendant

25

that are charged in the indictment as part of a crime" and was instead "being offered to show the relationships between the defendant and other groups, other people." Fuentes Ramirez App'x at 230. It further instructed that it was "the government's position, which the defendant vigorously disagrees with, that this will show, or help shed some light, on those relationships," and again emphasized that Medina's testimony was "not evidence of the crime charged in this case." *Id.* In light of that limiting instruction and given the seriousness of the charges against Fuentes Ramirez compared to the conduct Medina testified to, we cannot say that any unfair prejudice or risk of confusing the jury substantially outweighed the probative value of Medina's testimony. *Cf. United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (finding "no undue prejudice" when disputed evidence "did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction"). The district court did not abuse its discretion in admitting Medina's testimony.

## C. Sentencing Challenge

Fuentes Ramirez's final argument on appeal is that his sentence is substantively unreasonable. "[O]ur review of a sentence for substantive reasonableness is particularly deferential," and we do not "substitut[e] our own

26

judgment for that of district courts . . . ." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). Sentences are only substantively unreasonable if they are "so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *Id.* (internal quotation marks omitted). Moreover, we note that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011).

Applying our deferential standard of review, we conclude that Fuentes Ramirez's Guidelines life sentence followed by a mandatory consecutive sentence of thirty years is not so shockingly high or unsupportable as a matter of law as to be substantively unreasonable. As the district court observed, Fuentes Ramirez participated in a massive and violent drug trafficking conspiracy, controlled a cocaine laboratory that he protected with individuals armed with machineguns, and took part in five murders—all over the course of eleven years. As Fuentes Ramirez had committed some of "the most serious types of crimes that one can commit," the court determined that the need for the sentence to provide just punishment, to adequately deter criminal conduct, and to protect the public from

27

further crimes of Fuentes Ramirez was sufficient to warrant the sentence imposed. Fuentes Ramirez App'x at 366-67; *see* 18 U.S.C. § 3553(a). Those sentencing factors "can bear the weight assigned to [them]" in this case and we will not reweigh the factors ourselves. *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008). We therefore decline to disturb the sentence as substantively unreasonable.

\* \* \*

Having reviewed the records in these trials and the numerous arguments raised on appeal, we find no errors that would warrant vacating the judgments of conviction. Nor do we find that the sentence imposed on Fuentes Ramirez is substantively unreasonable. Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

28